Law Office of Wendy M. Crowther
Wendy M. Crowther, Esq. – ID # 038441994
98 First Avenue
Atlantic Highlands, NJ  07716
Tel: (732) 291-0800
Fax: (732) 261-5065
Attorneys for Plaintiff
Wendy@CrowtherLawNJ.com

| | |
|---|---|
| C&C ARC STONE REALTY LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>NAYA STONE LLC,<br><br>    Defendant, | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION, SPECIAL CIVIL PART<br>BERGEN COUNTY<br>DOCKET NO. LT-<br><br>CIVIL ACTION<br><br>**VERIFIED COMPLAINT**<br>**LANDLORD/TENANT**<br>**(COMMERCIAL) –**<br>**SUMMARY DISPOSSESS ACTION**<br>**PURSUANT TO <u>R</u>. 6:3-4** |

   Plaintiff, C&C Arc Stone Realty LLC (Landlord), by way of Verified Complaint, says:

<u>**The Parties**</u>

   1.  Plaintiff, C&C Arc Stone LLC, is the owner of record of the premises located at 690 Washington Avenue in Carlstadt, New Jersey ("C&C Property") and Landlord in this action. The address for Plaintiff is: 10 Raphael Rd., Totowa, New Jersey 07512.

   2.  Defendant Naya Stone, LLC is a New Jersey Limited Liability Company and is a Tenant at 690 Washington Avenue, Carlstadt, New Jersey, where it operates its business.

<u>**Factual Background**</u>

   3.  The C&C Property was used by related party, Arena Stone Products, Inc. ("Arena"), in connection with its business of purchasing, selling, and distributing marble, granite, and other stone products.

   4.  The assets, inventory and goodwill of Arena were sold on or about January 16, 2019, to Defendant, Naya Stone LLC ("Naya").  In connection with the sale, Arena (together with

any subsequent holders) held a Promissory Note for 1.5 million dollars, secured by the inventory. In addition, Naya members were to personally guarantee the transaction and provide Plaintiff and Arena with certified financial records, but to date have not done so.

5.      The Lease between the parties was executed at the time of the sale of Arena's business to Naya and permitted Naya's lease of the space Arena formerly used at 690 Washington Ave., Carlstadt, New Jersey.  A true and accurate copy of the Commercial Lease Agreement is attached hereto as **Exhibit A**.

6.      Under the lease terms, C&C Arc Stone Realty, LLC (Landlord) rented the premises to Naya Stone, LLC, (Tenant) as of January 2019 until the earlier of 11:59 p.m. on December 31, 2024, or Lease termination "pursuant to any of the conditions or covenants of this Lease or pursuant to law…".  Id. at ¶1.1 ("Term").  The Lease Agreement provided that Tenant Naya would pay initial monthly base rent in the amount of $15,000.

7.      The Lease Agreement, at ¶12 describes Events of Default under the Lease as:

Event of Default: Landlord's Remedies in Event of Default.

12.1 Each of the following shall constitute an event of default (each, an "Event of Default") under this Lease: (a) Tenant's failure to pay any amounts due under this Lease within ten (10) days from when same is overdue; (b) Tenant's failure to observe or perform any other term or condition of this Lease to be observed or performed by Tenant, and the continuance of such failure for ten (10) days after Landlord delivers written notice to Tenant of such failure; provided, however, that such failure shall not be an Event of Default if Tenant has commenced to cure and is diligently seeking to prosecute such cure to completion; (c) the adjudication of Tenant as bankrupt or insolvent or the filing of a voluntary or involuntary petition in bankruptcy; (d) the making by Tenant of a general assignment for the benefit of creditors or the **appointment of a receiver**; (e**) default under the Terms of that Arena Note.**

11.     Defendant Naya is in default of the Lease for multiple reasons, including failure to provide personal guarantees, a receiver having been appointed, an action for dissolution having been filed, and most recently due to its default under the Note.  The issues related to the personal guarantees, dissolution, and receiver are being litigated in Chancery Court, Bergen County, under docket BER-C-238-23.  Only the default occasioned by Naya's failure to pay the Promissory Note

on the maturity date is being addressed in this action as a basis for Tenant's removal and termination of the Lease.

**<u>Tenant's Breach of Lease Warranting Its Removal From the Premises</u>**

12.     Tenant's failure to pay the Note on the maturity date is a per se default of the Lease within the meaning of N.J.S.A. 2A:18-53(c)(4).

13.     The Promissory Note provides at ¶8:

DEFAULT.

1.     The Maker shall be in default under this Note upon the occurrence of any of the following events (each an "Event of Default"):

A.     If Maker **fails to make any payment** of any principle [sic] or interest when due under the Note or **upon the Maturity Date** which failure continues for (30) days after receipt of Notice of Non-Payment.

B.     Any representation or warranty of Borrower or Guarantor made in any Loan Document or in any writing given to the Borrower in connection with the subject Loan which shall have been incorrect in any material respect as of-the time when same shall have been made;

C.     The breach, failure to perform, or default by Borrower as to its obligations including without limitation the payment of rent under that certain Lease Agreement for the business premises occupied by Borrower;

*******

F.     **If Maker** falls to perform or breaches any covenant, agreement or undertaking in or **otherwise commits a default under this note, or under any Loan Document, or under any other document, instrument, or agreement, evidencing, securing or otherwise relating to the indebtedness evidenced by same;**

G.     **If any of the representations or warrantees or assurances made or given by the Maker in his Note or in any Loan Document or in or under any other document, instrument, or agreement, evidencing, securing or otherwise relating to the indebtedness evidenced by same are false or untrue or misrepresented, in whole or in part·**

*******

J.     Borrower shall become bankrupt or shall cease paying its debts generally as they mature or shall make an assignment for the benefit of creditors; (ii) a trustee, **receiver** or liquidator shall be appointed for any Borrower, or for a substantial part

of the property of any Borrower; (iii) bankruptcy, reorganization, arrangement, insolvency or similar proceedings shall be instituted by or against Borrower under the laws of any jurisdiction; (iv) Borrower shall convene or hold a meeting with its creditors to compromise or make similar arrangements with respect to its Indebtedness to such creditors;

14.     Naya has defaulted under the Note due to, *inter alia*, its failure to make full payment on the maturity date, March 1, 2024.

15.     The Lease, which clearly indicates default of the Note is a default of the Lease, provides the following remedies, including Landlord's right of re-entry, in the event of Tenant's default:

> 12.2 Upon the occurrence of any Event of Default, Landlord, in addition to any other rights or remedies available to it at law or in equity, and without further notice or demand, may exercise any and/or all of the following rights and remedies:  (a) elect to terminate this Lease; (b) if Tenant has failed to perform any of its obligations under this Lease, enjoin the failure or specifically enforce the performance of such obligation; or (c) immediately re-enter and take possession of the Premises, remove all persons and property therefrom, and store such property at Tenant's sole cost and expense, as Additional Rent; provided that Landlord may store Tenant's property in any place on the Property, or in any other place, at Tenant's expense and risk, as Additional Rent. Tenant waives all claims against Landlord for damages which may be caused by the re-entry of Landlord and the taking of possession of the Premises or removal or storage of Tenant's furniture and property as provided in this Lease. Tenant will indemnify and hold Landlord harmless from and against any loss, costs or damages caused by Landlord, and no such entry will be considered or construed to be a forcible entry. Should Landlord elect to re-enter, as provided in this Section 15 [sic], or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Landlord may either terminate this Lease or may from time to time, without terminating this Lease, re-let the Premises or any part thereof for such term or terms and at such market rates and upon other terms and conditions as Landlord in Landlord's sole discretion may deem advisable, with the right to make alterations and repairs to the Premises….Notwithstanding any re-letting without termination, Landlord may at any time thereafter elect to terminate this Lease for the previous Event of Default.

16.     Tenant Naya was required to pay the entire Note balance on or before March 1, 2024.  On February 29, 2024, Defendants were provided with notice of the maturity date of the Note and the balance of $1,008,650 due.  That amount included a default interest rate related to the ongoing default of the Note since inception.

17.     In light of the ongoing litigation under Docket No.:  BER-C-238-23 (Naya Stone, LLC v. C&C Arc Stone Realty, LLC) related to other issues between the parties, Naya was given

the option to pay the non-default balance of the Note ($602,725) with the disputed default balance ($405,925) to be held in escrow.

18.     Naya did not pay anything at all on the Maturity Date, nor has it made payment thereafter and to date.

19.     Naya sent correspondence to counsel for Landlord wherein it stated its refusal to pay the balance due on the Note <u>unless</u> it was permitted to exercise a previously revoked Option to Purchase the property, which revoked Option is the subject of the Chancery Litigation.

20.     Naya's continued failure to pay the Note on its maturity date is a default under the Lease and allows Landlord to exercise any or all of its rights under paragraph 12.2 of the Lease, including to dispossess Tenant and terminate the Lease.

21.     Pursuant to paragraph 12.3 of the Lease, upon Tenant's default, C&C as Landlord is entitled to:

> (a) reasonable costs and expenses in connection with a re-entry or taking of possession of the Premises; (b) reasonable costs and expenses in connection with making alterations and repairs for the purpose of re-letting; (c) reasonable attorney's fees; and (d) the value at the time of such termination of the amount of Rent for the remainder of the term of this Lease.  All such amounts shall be immediately due and payable from Tenant to Landlord as Additional Rent.

22.     On April 29, 2024, Landlord forwarded to Guaranteed Subpoena for service a Notice to Quit to be served upon Defendant.  Counsel for Defendant and its Members were also copied via email.  Same was served on Defendant on May 2, 2024, more than 3 days prior to the move out date of May 31, 2024.

WHEREFORE, Plaintiff Landlord demands a judgment in its favor as against Defendants as follows:

(a) A Warrant of Removal/ summary Dispossess for Tenant, Defendant Naya Stone LLC;

(b) Eviction of Tenant from the Premises;

(c) Awarding possession to Landlord;

(d) Awarding Landlord attorney's fees and costs associated with this action, pursuant to the Lease between the parties.

DATED:  June 5, 2024

Law Office of Wendy M. Crowther
Attorneys for Plaintiff,
*C&C Arc Stone Realty, LLC*

*Wendy M. Crowther*

By:  Wendy M. Crowther, Esq.

## LANDLORD VERIFICATION

1.      I certify that I am the authorized officer of C&C Arc Stone Realty, LLC, the limited liability company that owns the premises which the tenant occupies.

2.      I have read the Verified Complaint and the information contained in it is true and based on my personal knowledge.

3.      The documents attached to the Verified Complaint, including the Lease, are true and complete copies.

4.      The matter in controversy is not the subject of any other court action or arbitration proceeding now pending or contemplated other than the proceedings under Docket No. BER-C-238-23 in the Bergen County Chancery Division.  No other parties should be joined in this action.

5.      I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

I certify that the foregoing statements made by me are true and I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:                                                  C&C ARC STONE REALTY LLC

                                          By: _____
                                                  Michael Coiro, Owner

# EXHIBIT A

# COMMERCIAL LEASE AGREEMENT

THIS COMMERCIAL LEASE AGREEMENT (this "Lease") is made as of December  , 2018 by and between C&C Arc Stone Realty, LLC´ having an office at _10 Raphael Rd Totowa NS 07512_____ ("Landlord") and Naya Stone, LLC having an office at 30 West 22nd Street, New York, NY 10010 ("Tenant", and together with Landlord, each a "Party" and collectively, the "Parties").

**WHEREAS**, Landlord desires to let and demise to Tenant, and Tenant desires to lease from Landlord, that section of 690 Washington Avenue, Carlsdadt Avenue presently occupied by Arena Stone Products, LLC (collectively, the "Premises"), all as more specifically shown on the floor plan attached hereto as Exhibit A.

**NOW, THEREFORE**, for good and valuable consideration and the above recitals, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant hereby agree to the following terms and conditions:

1.       <u>Term; Base Rent; Additional Rent; Option to Renew</u>.

     1.1    <u>Term</u>. (a) Landlord hereby lets to Tenant, and Tenant hereby leases from Landlord, subject to the covenants and agreements contained in this Lease, the Premises for a term commencing on January , 2019 (the "Commencement Date"), and ending on the earlier to occur of (i) 11:59 p.m. on the December 31, 2024 or (ii) the date upon which the term of this Lease shall be canceled or terminated pursuant to any of the conditions or covenants of this Lease or pursuant to law (such earlier date herein called the "Expiration Date").

     1.2    <u>Base Rent</u>. Commencing on ~~February~~ *march 1 e/ ^9* 1, 2019 (the "Rent Commencement Date"), and continuing on the first day of each month thereafter, Tenant agrees to pay to Landlord base rental payments ("Base Rent") in fixed monthly installments at such place as Landlord may from time to time designate in the amount of FIFTEEN THOUSAND AND NO/100 DOLLARS ($15,000.00).

     1.3    <u>Late Payment Fee; Additional Rent; Rent</u>. Base Rent is due on or before the first (1st) day of each month. The Parties agree that if Tenant fails to make monthly payments of Base Rent in full on or before the tenth (10th) day of the month for which it is due, Tenant shall pay an additional amount equal to five percent (5%) of the unpaid amounts due for that month (the "Late Payment Fee"), as Additional Rent (as hereinafter defined). Any unpaid Base Rent and Additional Rent (collectively, "Rent") shall accrue interest at a rate of one and one-half percent (1-1/2%) per month, until paid in full. The Late Payment Fee and any interest charges for late Rent payments are in addition to any other remedies Landlord may have hereunder or by law. Landlord is not obligated to accept Rent late, or in installments, and may, at it's sole option, declare Tenant and this Lease to be in default if Rent becomes past due. All Rent payments shall be posted by Landlord in the following order of priority, as applicable: first, on account of past due Rent; second, on account of Additional Rent; and third, on account of current Base Rent. As such term is used in this Lease, "Additional Rent" shall refer to all amounts due by Tenant under this Lease

1

other than Base Rent, Utility Payments, Tax Payments, Cost of Operation Payments (each as hereinafter defined), Late Payment Fees, and any other costs not included in Base Rent and identified in this Lease as Additional Rent.

   1.4 <u>No Accord or Satisfaction</u>. No payment by Tenant or receipt or acceptance by Landlord of a lesser amount than the correct Rent due shall be deemed to be other than a payment on account, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance or pursue any other remedy in this Lease at law or equity.

   1.5 <u>Option to Purchase</u>. Provided that Tenant is not in default of any term or condition of this Lease, and this Lease is in full force and effect and tenant has not defaulted on the certain Promissory Note in the sum of One Million Four Hundred Thousand ($~~1,400,000~~) 1.5 00 000 dollars (Asset Purchase Note), dated January ___, 2019 wherein Tenant is the Borrower and Arena Stone Products, Inc. a related entity is the Landlord. This Article 1.5 is a material inducement to the Landlord to enter into the within Lease and extend to Tenant the within option. Tenant has the right and option during the term of this Lease to purcahse the Real Estate known as 690 ashington Avenue, Calrstadt, New Jersey in accordance with the Agreement of Sale attached hereto as Exhibit ____. Tenant may exercise the Option to Purchase while the Lease is in full force and effect and all rent payments and the Asset Purchase Money Note payments are current, by delivering to Landlord written notice (the "Option Notice"), of its election to exercise this option upon serving the Option Notice. In the event that this Option is exercised aforesaid with issuance of the Option Notice, Tenant shall together with the Option Notice shall pay and deliver to Landlord a non-refundable deposit of Fifty Thousand ($50,000) dollars. Closing of Title on the option is contingent upon and subject to the Asset Note being paid down to $750,000.00) dollars, which balance shall be secured and collateralized with a second Mortgage on the Real Estate subject only to a first Mortgage of a financial institution, the principle sum of which shall not to exceed three million ($3,000,000.00) dollars.

  2. <u>Security Deposit</u>.

   2.1 As a pre-condition to the effectiveness of this Lease, and as security for the full and faithful performance and observance by Tenant of the terms, provisions and conditions of this Lease, Tenant shall deliver to Landlord at the time of execution of this Lease a security deposit (the "Security Deposit") in the amount of Thirty Thousand ($30,000) Dollars which shall be due and payable at the time of execution of this Lease. The Five Hundred Thousand ($500,000) dollar deposit on the purchase of the Real Estate shall be inclusive of the ~~second deposit~~.

   2.2 If Tenant defaults in respect of the full and prompt payment and performance of any of the terms, provisions, covenants and conditions of this Lease, Landlord may, at its election, apply that portion of the Security Deposit to cover any past due payment of Base Rent or Additional Rent owed by Tenant. In the event Landlord applies any portion or all of the Security Deposit, Tenant shall promptly restore the amount so used, applied or retained (by the deposit with Landlord of cash) so that at all times the amount of the Security Deposit shall be not less than the security required by Section 2.1 hereof. If Tenant fails to comply with its obligations

under this Article 2, Landlord shall have the same rights and remedies as for the non-payment of Rent hereunder.

2.3     The Security Deposit shall be released to Landlord, Tenant shall not use or apply the Security Deposit as a substitute for Rent. Landlord's use, application or retention of the Security Deposit, or any portion thereof, shall not prevent Landlord from exercising any other right or remedy provided for in this Lease or by law, and shall not operate as a limitation on any recovery to which Landlord may otherwise be entitled. Landlord shall handle the Security Deposit in accordance with the prevailing laws governing security deposits for commercial leases in the State of New Jersey

2.4     Tenant shall fully and faithfully comply with all of Tenant's covenants and obligations under this Lease, the Security Deposit (if any) shall be returned to Tenant within thirty (30) days the expiration (but not earlier termination) of this Lease.

3.     Real Estate Taxes; Utilities; Operating Expenses.

3.1     Real Estate Tax Payments.

a. While Naya Stone, LLC remains as Tenant occupying a portion of the Real Estate, Landlord shall pay all real estate taxes and provide utilities at no cost to Tenant.

b. Commencing upon the first day of the first month after the Interstate Equipment Repair, Inc. Lease is terminated and Interstate Equipment Repair, Inc has vacated and surrendered possession of the Premises and continuing on the first day of each month thereafter throughout the term of this Lease, Tenant agrees to pay Landlord as Additional Rent, a real estate tax payment (the "Tax Payment") in an amount equal to 1/12 of all annual real estate taxes, tax imposition in substitution of real estate taxes, assessments, rates and charges, state and local real estate taxes, or any other governmental charges, general, special, ordinary or extraordinary (but excluding income or franchise taxes or any other taxes imposed upon or measured by Landlord's income or profits, or any taxes, fees, charges or assessments not in the nature of real estate taxes, fees, charges or assessments), which may now or hereafter be levied or assessed against the real estate (collectively, "Taxes") Property, the Premises and/or the related improvements (collectively, "Taxes"), and in addition shall maintain insurance covering the property or reimburse Landlord the cost of insurance and shall pay for all utilities servicing the property.

c. Landlord's failure to render or delay in rendering a bill with respect to any Tax Payment shall not prejudice Landlord's right to thereafter render such a bill therefor, nor shall the rendering of a bill for any Tax Payment prejudice Landlord's right to thereafter render a corrected bill therefor.

3

3.2    Utility Payments.

a.    While Naya Stone, LLC remains as Tenant occupying a portion of the Real Estate, Landlord shall pay all real estate taxes and provide utilities at no cost to Tenant.

b.    Commencing upon the first day of the first month after the Lease is terminated and Interstate Lease has terminated and has vacated and surrendered possession of the Premises subject to the Lease and continuing on the first day of each month thereafter throughout the term of this Lease, Tenant agrees to pay Landlord, as Additional Rent, a payment on account of the Property's common area and outside lighting utility consumption (the "Utility Payment") in an amount predicated equal to 1/12 of all common area Property-related utility costs, assessments, rates and charges, which may now or hereafter be levied or assessed against the Property, the Premises and/or the related improvements (each a "Utility", and collectively, the "Utilities"), including without limitation the cost of electricity (including for the Property's common areas and outside lighting), heating, ventilation and air-conditioning, water, sewer, gas and fuel.

c.    Landlord's failure to render or delay in rendering a bill or statement with respect to any Utility Payment shall not prejudice Landlord's right to thereafter render a bill or statement therefor, nor shall the rendering of a bill or statement for any Utility Payment prejudice Landlord's right to thereafter render a corrected bill or statement therefor.

4.    Delivery and Use of Premises; Prohibition Against Activities.

4.1    Tenant acknowledges that Tenant has inspected the Premises, is fully familiar with the condition thereof and accepts the Premises absolutely "as is".

4.2    Tenant shall use the Premises only as a warehouse facility with ancillary offices. Tenant shall not use or permit the use of the Premises, or any part thereof, for any other purpose or purposes without Landlord's prior written consent, which Landlord may not unreasonably withhold. Tenant shall not use the Premises in any way that will increase Landlord's existing insurance premiums relating to the Property and/or the Premises or cause a cancellation of any insurance policy covering the Property or any part thereof. Tenant shall not sell, or permit to be kept, used or sold, in or about the Premises, any article which may be prohibited by Landlord's insurance policies. Tenant shall not commit, or suffer to be committed, any waste upon the Premises, any public or private nuisance, or other act or thing that may disturb the quiet enjoyment of any other Tenant in the Property. Without limiting the generality of the foregoing, Tenant shall not use the Premises for any improper, immoral, unlawful or objectionable purpose, or for the keeping, storing or selling of intoxicating liquors, or for washing clothes, or for the preparation, manufacture or mixing in the Premises which might emit an odor in the Property which would disturb the peace and quiet enjoyment of any other tenant or occupant of the Property. Tenant shall not connect any electric wires or water pipes or ventilation ducts, or any apparatus, machinery or device, without Landlord's prior written consent, which shall not be unreasonably

4

withheld. Tenant shall, at its sole cost and expense, comply with the requirements of all municipal, state, and federal authorities pertaining to the Premises, and shall faithfully observe in the use of the Premises all applicable municipal ordinances and state and federal statutes now in force or which may in the future be in force. Tenant shall not conduct any operations that shall cause the Premises to be deemed an "industrial establishment" as such term is defined in the New Jersey Industrial Site Recovery Act.

4.3     If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business in the Premises or any part thereof, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same to Landlord for inspection. Additionally, Tenant shall not perform any alterations within the Premises that would require any modification or amendment of the Certificate of Occupancy for the Premises or the Property.

5.     <u>Abandonment of Premises</u>. Tenant covenants that it will not vacate or abandon the Premises at any time during the term of this Lease. If Tenant nevertheless does abandon, vacate or surrender the Premises, or is dispossessed therefrom by process of law or otherwise, any personal property belonging to Tenant that is left in the Premises shall be deemed to be abandoned, and Landlord shall have the right and option on ten (10) days written notice to Tenant to remove such property at Tenant's sole cost and expense, as Additional Rent.

6.     <u>Alterations and Repairs</u>.

6.1     Tenant acknowledges and agrees that the Premises are now in tenantable and good condition, Tenant shall make only those improvements, changes, or alterations in or to the Premises ("Alterations") with Landlord's prior written approval, which Landlord shall not unreasonably withhold, condition or delay to the Premises shall be done in a good and workmanlike manner, but in every case at Tenant's sole cost and expense, and shall at all times be and remain the property of Landlord and shall remain upon and be surrendered with the Premises upon the expiration or earlier termination of this Lease. Notwithstanding the foregoing, Tenant may, at its expense, when surrendering the Premises remove anything installed in the Premises by Tenant in order to restore the Premises to its original condition. Tenant shall, at the expiration or earlier termination of this Lease, surrender the Premises to Landlord in as good condition and repair as existed on the Commencement Date, normal wear and tear excepted.

6.2     Tenant shall at its own expense be responsible for maintaining the Real Estate including without limitation Property-related structural and roof repairs, heating, air conditioning, and plumbing.

6.3     Tenant shall, at its expense, throughout the term of this Lease, take good care of and maintain in good order and condition the Real Estate, the Premises, the warehouse structure, and the fixtures and improvements therein, including without limitation the property which is deemed Landlord's pursuant to this Lease and Tenant's property, except as otherwise provided herein. Tenant shall be responsible for all repairs, ordinary and extraordinary, foreseen or unforeseen, in and to the Premises, Real Estate, the Premises, the warehouse structure, and the fixtures and improvements therein and shall be responsible for the cost of all repairs, ordinary and

5

extraordinary, foreseen or unforeseen, in and to the Premises, Real Estate, the Premises, the warehouse structure, and the fixtures and improvements therein and the facilities and systems thereof.. Tenant shall be responsible for all repairs, maintenance and replacement of wall and floor coverings in the Premises, sanitary and electrical fixtures and equipment located therein, however, all such repairs, maintenance and replacements, in or to the Premises for which Tenant is responsible, shall be performed by or under the direction of Landlord, at Tenant's sole cost and expense.

7.   Liability for Damages. As a material part of the consideration to be rendered to Landlord under this Lease, Tenant waives all claims against Landlord for damages to goods, wares and merchandise in, upon or about the Premises, from any cause arising at any time, and Tenant will hold Landlord exempt and harmless from and against any damage or injury to the goods, wares, and merchandise of any person arising from the use of the Premises by Tenant, or arising from the failure of Tenant to keep the Premises in good condition as provided herein. Landlord shall not be liable to Tenant for any damage by or from any act or negligence of any co-tenant or other occupant of the Property, or by any owner or occupant of adjoining or contiguous property. Tenant agrees to pay, as Additional Rent, for all damages to the Premises, as well as all damages incurred by Landlord and/or occupants of the Property, which damages were caused by Tenant's misuse or neglect of the Premises.

8.   Landlord's Right of Entry for Inspection and Repair; Showing of Premises.

8.1   Tenant shall permit Landlord and its agents to enter into and upon the Premises at all reasonable times for the purpose of inspecting the Premises, and to do anything which Landlord deems necessary to be done for the purpose of maintaining the Real Estate.

8.2   If prior to the expiration of the term of this LeaseTenant shall have removed all or substantially all of Tenant's property from the Premises, Landlord may immediately enter the Premises for the purpose of altering, renovating or redecorating the Premises, provided that such reentry will not result in any abatement of Rent, or any liability of Landlord to Tenant hereunder, and such act shall have no effect on this Lease or Tenant's obligations hereunder.

9.   Tenant's Covenants. Throughout the term of this Lease, Tenant shall at its expense:

9.1. maintain the Premises in a clean, orderly and sanitary condition and free of insects, rodents, vermin and other pests;

9.2. keep any garbage, trash and other refuse in sealed containers within the interior of the Premises until removed to designated receptacles in an area designated by Landlord from time to time;

9.3. if the Premises becomes infested with vermin as a result of the use or any misuse or neglect of the Premises by Tenant, its agents, employees, visitors or licensees, cause the same to be exterminated from time to time to the reasonable satisfaction of Landlord and shall employ such exterminators and such exterminating company or companies as shall be reasonably approved by Landlord;

6

9.4. take good care of the Premises and perform any and all required repairs, replacements and maintenance to the interior thereof, including without limitation to the plumbing, electrical and HVAC systems;

10.   Interruption of Services or Use; Repairs by Landlord.

10.1   In the event of a partial destruction of the Premises during the term of this Lease, from any cause, Landlord shall promptly make repairs provided that such repairs can be made within ninety (90) days under the laws and regulations of any applicable governmental authority; provided, however, that if such repairs are the responsibility of the Tenant pursuant to then Landlord shall not be obligated to make such repairs, but shall assert its rights to enforce the Tenant's obligation to undertake such repairs. Such partial destruction shall not render this Lease void, but Tenant shall be entitled to a proportionate reduction of Rent while such repairs are being made, with such proportionate reduction to be based on Landlord's reasonable determination of the extent to which the making of such repairs shall interfere with the business carried on by Tenant in the Premises. If such repairs cannot be made within such ninety (90) days as aforesaid, Landlord may, at its option, make the repairs within a reasonable time and this Lease will continue in full force and effect, provided that the proportionate reduction in Rent shall continue while such repairs are being made. Notwithstanding anything to the contrary contained in this Lease, in the event that Landlord determines that it cannot make the repairs within the ninety (90) days as aforesaid and Landlord elects not to proceed to make the repairs within a reasonable time, or such repairs cannot be made under applicable laws and regulations, either Party shall have the right and option to terminate this Lease upon written notice to the other Party, which notice shall specify the date of termination. From and after such termination, netiher Party shall have any obligations to the other Party except as expressly set forth to the contrary in this Lease.

10.2   In the event that more than fifty percent (50%) of the Property is destroyed, Landlord may elect to terminate this Lease on notice to Tenant, whether the Premises are damaged or not. In furtherance of the foregoing, this Lease shall terminate upon the total destruction of the Property.

11.   Assignment and Sublease.

11.1   Tenant shall not, whether voluntarily, involuntarily, or by operation of law or otherwise have the right to (i) assign in whole or in part or otherwise transfer in whole or in part this Lease or the term and estate hereby granted, or advertise to do so, (ii) sublet the Premises or any part thereof, or offer or advertise to do so, or allow the same to be used, occupied or utilized by anyone other than Tenant, (iii) mortgage, pledge, encumber or otherwise hypothecate this Lease or the Premises or any part thereof in any manner whatsoever or (iv) without in each instance obtaining the prior written consent of Landlord, which consent Landlord may withhold in its sole discretion.

12.  <u>Event of Default: Landlord's Remedies in Event of Default.</u>

12.1  Each of the following shall constitute an event of default (each, an "Event of Default") under this Lease: (a) Tenant's failure to pay any amounts due under this Lease within ten (10) days from when same is overdue; (b) Tenant's failure to observe or perform any other term or condition of this Lease to be observed or performed by Tenant, and the continuance of such failure for ten (10) days after Landlord delivers written notice to Tenant of such failure; provided, however, that such failure shall not be an Event of Default if Tenant has commenced to cure and is diligently seeking to prosecute such cure to completion; (c) the adjudication of Tenant as bankrupt or insolvent or the filing of a voluntary or involuntary petition in bankruptcy; (d) the making by Tenant of a general assignment for the benefit of creditors or the appointment of a receiver; (e) default under the Terms of that Arena Note.

12.2  Upon the occurrence of any Event of Default, Landlord, in addition to any other rights or remedies available to it at law or in equity, and without further notice or demand, may exercise any and/or all of the following rights and remedies: (a) elect to terminate this Lease; (b) if Tenant has failed to perform any of its obligations under this Lease, enjoin the failure or specifically enforce the performance of such obligation; or (c) immediately re-enter and take possession of the Premises, remove all persons and property therefrom, and store such property at Tenant's sole cost and expense, as Additional Rent; provided that Landlord may store Tenant's property in any place on the Property, or in any other place, at Tenant's expense and risk, as Additional Rent. Tenant waives all claims against Landlord for damages which may be caused by the re-entry of Landlord and the taking of possession of the Premises or removal or storage of Tenant's furniture and property as provided in this Lease. Tenant will indemnify and hold Landlord harmless from and against any loss, costs or damages caused by Landlord, and no such entry will be considered or construed to be a forcible entry. Should Landlord elect to re-enter, as provided in this Section 15, or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided for by law, Landlord may either terminate this Lease or may from time to time, without terminating this Lease, re-let the Premises or any part thereof for such term or terms and at such market rates and upon other terms and conditions as Landlord in Landlord's sole discretion may deem advisable, with the right to make alterations and repairs to the Premises. Rentals received by Landlord from such re-letting shall be applied first to the payment of any indebtedness, other than Rent, due under the terms of this Lease from Tenant to Landlord; second, to the payment of Rent due and unpaid hereunder; third, to the payment of any cost of re-letting; and fourth, to the payment of the cost of any alterations and repairs to the Premises. Should the rentals received from any re-letting during any month be less than the Rent required to be paid pursuant to this Lease, then Tenant shall pay the deficiency to Landlord, as Additional Rent. The deficiency shall be calculated and paid monthly. No such re-entry or taking possession of the Premises by Landlord shall be construed as an election on the part of Landlord to terminate this Lease unless Landlord delivers to Tenant a written notice of such election or unless the termination is decreed by a court of competent jurisdiction. Notwithstanding any re-letting without termination, Landlord may at any time thereafter elect to terminate this Lease for the previous Event of Default.

8

12.3    If Landlord at any time terminates this Lease for any Event of Default, then, in addition to any other rights and remedies that Landlord may have, Landlord may recover from Tenant, as Additional Rent, all damages that Landlord incurs by reason of such Event of Default, including without limitation: (a) reasonable costs and expenses in connection with a re-entry or taking of possession of the Premises; (b) reasonable costs and expenses in connection with making alterations and repairs for the purpose of re-letting; (c) reasonable attorneys' fees; and (d) the value at the time of such termination of the amount of Rent for the remainder of the term of this Lease. All such amounts shall be immediately due and payable from Tenant to Landlord, as Additional Rent.

12.4    It is understood and agreed that the remedies given to Landlord shall be cumulative, and the exercise of any one remedy by Landlord shall not be to the exclusion of any other remedy.

13.    Surrender by Tenant of Lease. The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation of the Lease by the Parties, shall not constitute a merger, and shall, at the option of Landlord, terminate all or any existing subleases or sub tenancies, or may, at the option of Landlord, operate as an assignment of any or all such subleases or sub tenancies to Landlord. Tenant shall fully vacate and surrender the Premises to Landlord in accordance with the provisions of this Lease "broom-clean" and in as good order, condition and repair as delivered to Tenant on the Commencement Date, normal wear and tear, damage from fire or other casualty, eminent domain or condemnation, and repairs that are not the responsibility of Tenant under this Lease excepted.

14.    Use of Alternative Dispute Resolution.
14.1    In the event that Tenant intends to prosecute a claim against Landlord for a wrongful withholding of possession of the Premises, or because of any Event of Default of any other covenant contained in this Lease, Tenant agrees that it shall only bring its claim, if not settled or agreed between them, to be determined through Alternative Dispute Resolution ("ADR"). ADR includes mediation, arbitration and other ways of resolving conflicts with the help of a specially trained neutral third party without the need for a formal trial or hearing.

14.2    Tenant may commence such proceedings by giving written notice to Landlord of the desire to arbitrate or mediate, but Tenant shall not give such a notice unless Tenant has first demonstrated its willingness to negotiate and act reasonably with a view to resolving the dispute by agreement between the Parties. ADR will be conducted in accordance with the provisions of the laws of the State of New Jersey. Should a situation be resolved through ADR, the final decisions and remedies as a result of ADR will be binding on both Parties. In the event that ADR fails to resolve a dispute, the Parties shall proceed to litigation.

14.3    The payment of costs arising from any such disputes shall be determined by the mediator/arbitrator as a final determination binding on both parties.

14.4    Notwithstanding anything to the contrary contained in this Lease, Landlord reserves the right and option to elect to pursue its claims against Tenant in any forum of Landlord's choosing, including ADR and/or litigation.

9

15.  <u>Notices</u>. All notices to be given to either Landlord or Tenant may be given in writing delivered personally, or by depositing the notices in the United States mail, Certified Mail, Return Receipt Requested, or by overnight courier, and addressed to the Parties at the addresses first listed above, whether or not Tenant has departed from, abandoned, or vacated the Premises, unless either party provides the other with a different notice address in writing in accordance with this Section.

16.  <u>Effect of Waiver of Breach of Covenants</u>. The waiver by Landlord of any breach of any covenant or condition contained in this Lease shall not be deemed to be a waiver of such a covenant or condition, or any subsequent breach of such covenant or condition. Landlord's acceptance of Rent under this Lease shall not be deemed to be a waiver of any preceding breach by Tenant of any covenant or condition of this Lease, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.

17.  <u>Holdover After Expiration of Term</u>.

17.1 If Tenant shall hold over after the expiration of the term of this Lease or any duly exercised extension period (as more particularly set forth herein), then irrespective of whether or not Landlord accepts rent from Tenant for a period beyond the Expiration Date, the parties hereby agree that Tenant's occupancy of the Premises after the expiration of the term shall be shall be as an unpermitted holdover tenant, which holdover tenancy shall be upon all of the terms set forth in this Lease except those that are inapplicable by their nature and except that Tenant shall pay to Landlord on the first day of each month of the holdover period as Base Rent, an amount equal to three (3) times the higher of: (i) one-twelfth of the sum of the Base Rent and Additional Rent payable by Tenant during the last year of the term of this Lease (*i.e.*, the year immediately prior to the holdover period) or (ii) an amount equal to the then market rental value for the Premises as determined by Landlord in good faith and as set forth in a notice to Tenant. Further, Landlord shall not be required to perform any work, furnish any materials or make any repairs within the Premises during the holdover period. It is further stipulated and agreed that if Landlord shall, at any time after the expiration of the original term or after the expiration of any term created thereafter, proceed to remove Tenant from the Premises as a holdover, the Base Rent for the use and occupancy of the Premises during any holdover period shall be calculated in the same manner as set forth above. In addition to the foregoing, Landlord shall be entitled to recover from Tenant any losses or damages arising from such holdover as provided in this Section 17.

17.2  Notwithstanding anything to the contrary contained in this Lease, the acceptance of any rent paid by Tenant pursuant to this Section 17 shall not preclude Landlord from commencing and prosecuting a holdover or summary eviction proceeding. If Tenant shall hold-over or remain in possession of any portion of the Premises beyond the Expiration Date, Tenant shall be subject not only to summary proceedings and all damages related thereto, but all damages to Landlord by reason of such holding over by Tenant may be the subject of a separate action and need not be asserted by Landlord in any summary proceedings against Tenant.

18.  Binding Effect on Successors and Assigns. The covenants and conditions contained in this Lease, subject to the provisions as to assignment, shall apply to and bind the heirs, successors, executors, administrators and permitted assigns of all of the Parties to this Lease; and all of the Parties to this Lease shall be jointly and severally liable under this Lease.

19.  Indemnification by Tenant and Tenant's Insurance.

19.1  Tenant shall be responsible for and shall relieve, indemnify and save Landlord harmless from and against (i) all liability for loss of life, personal injury and/or damage to property occurring in the Premises, and (ii) any loss or damage resulting from Tenant's failure to perform its obligations under this Lease.

19.2  Tenant, at its expense, shall maintain at all times during the term of this Lease (a) "all risk" property insurance covering all present and future Tenant's property, leasehold improvements and Tenant's improvements and betterments to a limit of not less than the full replacement value thereof, provided that such insurance shall include a replacement cost endorsement, and (b) commercial general liability insurance, including contractual liability, in respect of the Premises and Tenant's conduct or operation of business therein, with Landlord, Naya Stone, LLC as additional insured, with limits of not less than One Million Dollars ($1,000,000.00) combined single limit for bodily injury and property damage liability in any one occurrence. The limits of such insurance shall not limit the liability of Tenant hereunder. Tenant shall deliver to Landlord and any additional insureds, at least ten (10) days prior to the Commencement Date, such fully paid-for policies or certificates of insurance, in a form satisfactory to Landlord, issued by an insurance company or its authorized agent. Tenant shall procure and pay for renewals of such insurance from time to time before the expiration thereof, and Tenant shall deliver to Landlord and any additional insureds such renewal policy or a certificate thereof at least thirty (30) days before the expiration of any existing policy. All such policies shall be issued by companies of recognized responsibility licensed to do business in the State of New Jersey and rated by Best's Insurance Reports or any successor publication of comparable standing and carrying a rating of A VIII or better or the then equivalent of such rating, and all such policies shall contain a provision whereby the same cannot be canceled or modified unless Landlord and any additional insureds are given at least thirty (30) days prior written notice of such cancellation or modification. Tenant's comprehensive general liability insurance shall contain a broad form contractual liability endorsement, under which the insurer agrees to indemnify and hold Landlord, Landlord's agent and any mortgagee harmless from and against all costs, expenses and/or liabilities arising out of or based upon any and all claims, accidents, injuries and damages.

19.3  Each Party agrees to have included in each of its insurance policies (insuring the Property and any other Landlord's property therein in the case of Landlord, and insuring Tenant's property and leasehold improvements and Tenant's improvements and betterments in the case of Tenant, against loss, damage or destruction by fire or other casualty) a waiver of the insurer's right of subrogation against the other Party during the term of this Lease or, if such waiver should be unobtainable or unenforceable, (a) an express agreement that such policy shall not be invalidated if the insured waives the right of recovery against any party responsible for a casualty covered by the policy before the casualty or (b) any other form of permission for the release of the other Party. If such waiver, agreement or permission shall not be, or shall cease to be, obtainable

11

from either Party's then current insurance company, the insured Party shall so notify the other Party promptly after learning thereof, and shall use its best efforts to obtain the same from another insurance company described in this Section 23. Each Party hereby releases the other Party, with respect to any claim (including a claim for negligence) which it might otherwise have against the other Party, for loss, damage or destruction with respect to its property occurring during the term of this Lease to the extent to which it is, or is required to be, insured under a policy or policies containing a waiver of subrogation or permission to release liability, as provided in the preceding subdivisions of this Section. Nothing contained in this Section shall be deemed to relieve either Party of any duty imposed elsewhere in this Lease to repair, restore or rebuild, or to nullify any abatement of rents, if any, provided for elsewhere in this Lease.

19.4    Landlord may from time to time notify Tenant in writing that the amount of the insurance to be maintained by Tenant under this Section 19 shall be reasonably increased, so that the amount thereof at all times adequately protects Landlord's interests.

20.    <u>Miscellaneous Covenants of Tenant</u>.

20.1.    Throughout the term of this Lease, Tenant shall at its sole cost and expense:

1. pay Rent, which includes Base Rent, Additional Rent and all other sums due and payable under this Lease, without notice or demand on the days, times and at the places that the same are payable, and without abatement, deduction or set off, except as otherwise expressly set forth in this Lease or as may be provided by law;

b. keep the Premises in as good order and repair as on the first day of the Lease, reasonable wear and tear and damage by any casualty not occurring through acts of Tenant or Tenant's agents, employees, or invitees excepted;

c. for damages caused in whole or in part by the act of Tenant or Tenant's agents, employees or invitees, pay Landlord on demand, as Additional Rent, the cost of repair and/or restoration of the Premises, the Property or any part thereof, together with interest at the rate of one and one-half percent (1-1/2%) per month;

d. peaceably deliver up and surrender possession of the Premises at the expiration or earlier termination of this Lease, in the same condition in which Tenant has agreed to keep same during the continuance of this Lease, broom clean, and at such time, without demand or delay, deliver to Landlord or its agent all keys and access cards for the Premises;

e. comply with all laws and ordinances, and all rules, orders and regulations of all governmental authorities and of all insurance bodies, at any time duly issued or in force, applicable to the Premises or any part thereof or to Tenant's use thereof, and promptly correct any violation of, and comply with, all laws, ordinances, notices, permits or statements of occupancy,

12

requirements, orders, regulations and recommendations, now or hereafter in effect and of whatever nature of any and all the federal, state, county, municipal and/or other authorities and of the Board of Fire Underwriters and any insurance organizations or associations, and/or companies, with respect to Tenant's conduct or use of the Premises;

f.   pay to Landlord, as Additional Rent, any and all increases in premiums on insurance now or hereafter carried by Landlord on the Property and/or the Premises, which increases are caused by Tenant's breach of any of the provisions of this Lease;

g.   use every reasonable precaution against fire or other casualty;

h.   give to Landlord prompt written notice (which in no event shall exceed forty-eight (48) hours from the time of such accident or occurrence) of any accident, fire, casualty or damage occurring on or to the Premises, and of any defects in the apparatus in the Premises of which Tenant is or becomes aware;

21.2    Without the express written consent and approval of Landlord, Tenant, its agents, employees, invitees or (when permitted) its assignees and/or subtenants shall not do any of the following:

a.   occupy the Premises in any manner or for any purpose except as permitted in this Lease;

b.   make any alterations, improvements or additions to the Premises except as expressly permitted in this Lease;

c.   use or occupy the Premises or permit or suffer the same to be used or occupied in violation of the use regulation permit or Certificate of Occupancy issued for the Premises or in violation of any statute, ordinance or any requirement of any public authority; provided that the use permitted by this Lease shall not be deemed a representation or guarantee by Landlord that such use is lawful or permitted under any permit, Certificate of Occupancy or otherwise;

22.    No Broker. Tenant covenants, warrants and represents that no broker was instrumental in bringing about or consummating this Lease and that Tenant had no conversations or negotiations with any broker concerning the leasing of the Premises. Tenant agrees to indemnify and hold harmless Landlord against and from any claims for any brokerage commissions and all costs, expenses and liabilities in connection therewith, including without limitation reasonable attorneys' fees and expenses, arising out of any conversations or negotiations had by Tenant with any broker. Landlord agrees to indemnify and hold harmless Tenant against and from any claims for any brokerage commissions and all costs, expenses and liabilities in connection therewith, including without limitation reasonable attorneys' fees and expenses, arising out of conversations

13

or negotiations had by Landlord with any broker purporting to represent Tenant and with whom Tenant shall have had no dealings.

23. <u>Entire Agreement</u>. This instrument, together with the Recitals herein and the Exhibits attached hereto (all of which shall be deemed part of this Lease), contains the entire agreement and understanding between the Parties hereto with respect to the lease of the Premises to Tenant. No statements, representations, prior agreements or understandings not herein set forth shall have any force or effect unless an appropriate Lease amendment is fully executed and delivered by all Parties hereto. This Lease shall become effective only upon execution hereof by both Parties hereto and delivery of a fully executed original hereof to Tenant.

24. <u>Delivery and Acceptance of the Premises</u>: Tenant has heretofore inspected the Premises, shall accept the Premises upon execution of this Lease and delivering of the initial security deposits in its "AS-IS" condition, Landlord's use and possession of the Premises prior to the Commencement Date shall be limited to inspections, painting and preparing the Premises for the operation of Tenants' business subject only to latent and structural defects and Landlord prior to Tenant taking possession shall strip and polish the floor of the Premises.

25. <u>Estoppel.</u> Tenant shall at any time and from time to time within ten (10) days of receipt of written request therefor, execute, acknowledge and deliver to Landlord an estoppel certificate, in a form satisfactory to Landlord, certifying (i) that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications); (ii) the dates to which Base Rent and Additional Rent have been paid in advance, if any; (iii) whether any options granted to Tenant pursuant to the provisions of this Lease have been exercised; (iv) whether or not to the best knowledge of the signer, Landlord is in default in performance of any of its obligations under this Lease, and if so, specifying each such default of which Tenant may have knowledge; (v) whether Tenant has received notice that Tenant is in default in performance of any of its obligations under this Lease, and if so, specifying each such default; and (vi) as to any other matters reasonably requested by Landlord. Tenant acknowledges and agrees that any estoppel certificate delivered pursuant to this Section may be relied upon by a prospective purchaser of Landlord's interest, a mortgagee of Landlord's interest, or any other party determined by Landlord.

26. <u>Miscellaneous.</u>

26.1. No agreement shall be effective to change, modify, waive, release, discharge, terminate or effect an abandonment of this Lease, in whole or in part, unless such agreement is in writing, refers expressly to this Lease and is signed by the party against whom enforcement of the change, modification, waiver, release, discharge, termination or effectuation of the abandonment is sought.

26.2. Tenant shall look only to Landlord's insurance coverage and Landlord's estate and property in the Property for the satisfaction of Tenant's remedies, for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default by Landlord hereunder, and no other property or assets of Landlord or its partners, officers, directors, shareholders or principals, disclosed or undisclosed, shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with

14

respect to this Lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the Premises.

26.3.    Upon the expiration or other termination of this Lease neither Party shall have any further obligation or liability to the other except as otherwise expressly provided in this Lease and except for such obligations as by their nature or under the circumstances can only be, or by the provisions of this Lease, may be, performed after such expiration or other termination; and, in any event, unless otherwise expressly provided in this Lease, any liability for a payment (including without limitation Additional Rent) which shall have accrued to or with respect to any period ending at the time of expiration or other termination of this Lease shall survive the expiration or other termination of this Lease. If Tenant shall request Landlord's consent and Landlord shall fail or refuse to give such consent, Tenant shall not be entitled to any damages for any withholding by Landlord of its consent, it being intended that Tenant's sole remedy shall be an action for specific performance or injunction, and that such remedy shall be available only in those cases where Landlord has expressly agreed in writing not to unreasonably withhold its consent or where as a matter of law Landlord may not unreasonably withhold its consent.

26.4.    The submission by Landlord of this Lease in draft form shall be deemed submitted solely for Tenant's consideration and not for acceptance and execution. Such submission shall have no binding force or effect and shall confer no rights nor impose any obligations, including brokerage obligations, on either party unless and until both Landlord and Tenant shall have executed the Lease and duplicate originals thereof shall have been delivered to the respective Parties.

26.5.    Irrespective of the place of execution or performance, this Lease shall be governed by and construed in accordance with the laws of the State of New Jersey. If any provisions of this Lease or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Lease and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. Captions, headings and titles in this Lease are solely for convenience of references and shall not affect its interpretation. This Lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this lease to be drafted. Each covenant, agreement, obligation or other provision of this Lease on Tenant's part to be performed, shall be deemed and construed as a separate and independent covenant of Tenant, not dependent on any other provision of this Lease. All terms and words used in this Lease shall be deemed to include any other number and any other gender as the context may require.

26.6.    If under the terms of this Lease Tenant is obligated to pay Landlord a sum in addition to the Base Rent under the Lease and no payment period therefor is specified, Tenant shall pay Landlord the amount due within fifteen (15) days after being billed.

26.7.    Notwithstanding anything to the contrary contained in this Lease, during the continuance of any default by Tenant after the giving of notice and the expiration of any applicable grace periods hereunder, Tenant shall not be entitled to exercise any rights or options, or to receive any funds or proceeds being held, under or pursuant to this Lease.

26.8.   Tenant represents and warrants that this Lease has been duly authorized, executed and delivered by Tenant.

26.9.   Tenant shall not cause or permit Hazardous Materials (as defined below) to be used, transported, stored, released, handled, produced or installed in, on or from, the Premises and/or the Property. The term "Hazardous Materials" shall, for the purposes hereof, mean any flammable explosives, radioactive materials, hazardous wastes, hazardous and toxic substances, or related materials, asbestos or any material containing asbestos, or any other substance or material, as defined by any federal, state or local environmental law, ordinance, rule or regulation including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act, as amended, the Resource Conservation and Recovery Act, as amended, and in the regulations adopted and publications promulgated pursuant to each of the foregoing. In the event of a breach of the provisions of this Section, Landlord shall, in addition to all of its rights and remedies under this Lease and pursuant to law, remove, or require Tenant to remove (in either case at Tenant's expense, as Additional Rent), any such Hazardous Materials from the Premises in the manner prescribed for such removal by all applicable legal requirements. The provisions of this Section shall survive the termination of this Lease. Notwithstanding anything to the contrary contained in this Lease, Tenant may use radioactive isotopes in its ordinary course of business, provided that such storage, use and disposal is maintained in accordance with all applicable federal, state or local environmental laws, ordinances, rules and/or regulations.

27.   <u>Guaranty of Lease</u>.   As a material inducement for Landlord to enter into this Lease with Tenant, and as additional security for the performance of Tenant's obligations under this Lease, Tenant shall, simultaneously with the execution and delivery of this Lease, deliver to Landlord a personal guaranty in the form annexed hereto as <u>Exhibit F</u> and made a part hereof (the "Guaranty") duly executed by Amihai Dabah, a principal of Tenant.

28.   <u>List of Exibits</u>. The Parties acknowledge and agree that the following Exhibits are made a part of and are incorporated into this Lease:

> Exhibit A –   Floor Plan
> Exhibit B –   Asset Purchase Note
> Exhibit C –   Guaranty of Lease

IN WITNESS WHEREOF, the Parties have signed this Lease as of the date first above written.

Landlord: Arena Stone Products, Inc.

Tenant: Naya Stone, LLC

By: _____

By: _____

Name: Danny Coiro
Title: President

Name: Amihai Dabah
Title: President

16

## EXHIBIT A

### Floor Plan of the Premises

[See attached]

**EXHIBIT B**

Asset Purchase Note

EXHIBIT C

Guaranty of Lease

GUARANTY OF LEASE (this "Guaranty") made as of by *Amihai Dabah*, an individual having an address at *30 West 22nd Street, New York, NY 10010* ("Guarantor"), ~~and the Social Security Number~~ _____, to and for the benefit of *Dan Cojro*, having an address at *10Raphael Rd Totowa NS 07512* ("Landlord").

## W I T N E S S E T H:

WHEREAS, concurrently with the execution and delivery of this Guaranty, Landlord and ("Tenant") have executed and delivered a lease (the "Lease") for use as a daycare center (the "Premises") in the building located at *690 Washington Ave* (the "Building"), as more particularly described in the Lease; and

WHEREAS, as a specific and material inducement to Landlord to enter into the Lease with Tenant, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and as an inducement for Landlord to enter into the Lease with Tenant, Guarantor agrees as follows:

1.      Guarantor hereby, absolutely, unconditionally and irrevocably guarantees to Landlord the full and prompt payment of (a) all Base Rent, Additional Rent and other charges, costs and expenses (including without limitation all interest, attorneys' fees and sums expended on Tenant's behalf by Landlord) which shall be due and payable by Tenants during the initial twelve (12) months of the Lease Term and thereafter for all Base Rent and Additional Rent while Tenants remain in possession of the Premises and for the three (3) month period after Tenants have vacated and surrendered possession of the Premises to Landlord; and (b) all damages caused, and costs and expenses incurred, by reason of Tenant's failure to pay for work performed by or on behalf of Tenant at and/or materials supplied to the Premises including, without limitation, the failure to remove any mechanic's liens filed against the Building (collectively, "Tenant's Accrued Liabilities"). Guarantor covenants to Landlord that if Tenant, or Tenant's successors, sublessees or assigns, shall at any time during the Term of the Lease (the "Term") default in the payment of any such Rent or other sums and charges payable with respect to the Premises, Guarantor shall pay all such sums as set forth in 1 (a) and 1 (b) above1, Landlord's right to retain and apply the Security Deposit deposited by Tenant thereunder.

2.      This is a limited guaranty of payment (and not of collection) and of performance, and Guarantor further waives any right to require that any action be brought against Tenant (or any other person or entity) to require that resort be had to any security or to any balance of any deposit account or credit on the books of Landlord in favor of Tenant (including the Security Deposit under the Lease) or any other person or entity. No invalidity, irregularity or unenforceability of all or any part of the Lease shall affect, impair or be a defense to this Guaranty.

19

The validity of this Guaranty and the obligations of Guarantor hereunder shall not be terminated, affected or impaired by reason of Landlord's assertion or failure to assert against Tenant (or any other party or entity) of any of Landlord's rights or remedies pursuant to the provisions of the Lease or applicable law. Guarantor's liability under this Guaranty shall be primary and in any right of action which may accrue to Landlord under the Lease, Landlord may, at its option, proceed against Guarantor or Tenant, without having commenced any action against or having obtained any judgment against Tenant or Guarantor. Successive recoveries may be had hereunder.

3.      All monies available to Landlord for application in payment or reduction of Tenant's Accrued Liabilities may be applied by Landlord, in such manner and in such amounts and at such time or times as Landlord may see fit, to the payment or reduction of such of Tenant's Accrued Liabilities as Landlord may elect. Guarantor hereby expressly waives: (a) notice of acceptance of this Guaranty; (b) presentment and demand for payment of any of Tenant's Accrued Liabilities; (c) protest and notice of dishonor or default to Guarantor or to any other party with respect to any of Tenant's Accrued Liabilities.

4.      Notwithstanding any payments made by Guarantor hereunder, Guarantor shall not be subrogated to any of the rights of Landlord against Tenant for any payment, nor shall Guarantor seek any reimbursement from Tenant in respect of payments made by Guarantor hereunder, until Tenant's Accrued Liabilities have been paid in full.

5.      This Guaranty shall be a continuing guaranty and Guarantor's obligations under this Guaranty shall remain in full force and effect without regard to, and shall not be impaired or affected by: (a) any amendment, extension or modification of, or addition or supplement to, any of the terms, conditions or provisions of the Lease or any assignment thereof; (b) any compromise, release, consent, extension, indulgence or other action or inaction relating to any of the terms, conditions or provisions of the Lease; (c) any substitution or release, in whole or in part, of any security for the Lease (including the Security Deposit) or this Guaranty which may be held at any time by Landlord; (d) any exercise or non-exercise by Landlord of any right, power or remedy under or in respect of the Lease or any security (including the Security Deposit) held at any time by Landlord, or any waiver of any such right, power or remedy; (e) any bankruptcy, insolvency, reorganization, arrangement, adjustment, liquidation or the like of Tenant or any other guarantor, or the discharge or release of Tenant or any other guarantor in any such bankruptcy proceeding; (f) any limitations of Tenant's liability under the Lease or which may now or hereafter be imposed by any statute, regulation or rule of law, or any illegality, irregularity, invalidity or unenforceability, in whole or in part, of the Lease; (g) any sale, lease or transfer of any or all of Tenant's assets to any other person or entity; or (h) any other circumstance, whether or not Guarantor shall have had notice or knowledge thereof.

6.      If Tenant becomes insolvent or shall be adjudicated bankrupt or shall file for reorganization or similar relief, or if such petition is filed by Tenant's creditors under any future Federal or State law, Guarantor's obligations hereunder may nevertheless be enforced against Guarantor. The termination of the Lease pursuant to the exercise of any rights of a trustee or receiver in any of the foregoing proceedings shall not affect Guarantor's obligations hereunder or create in Guarantor any set-off against such obligations. Neither Guarantor's obligations under this Guaranty nor any remedy for enforcement thereof shall be impaired, modified or limited in any

20

manner by any impairment, modification, waiver or discharge resulting from the operation of any present or future provision under the Federal Bankruptcy Act or any other statute or decision of any court.

7.    Guarantor hereby: (a) irrevocably consents and submits to the jurisdiction of any federal, state, county or municipal court sitting in the County in which the Building is situated in respect to any action or proceeding brought therein by Landlord against Guarantor concerning any matter arising out of or in any way relating to this Guaranty or the Lease; (b) expressly waives any rights of Guarantor pursuant to the laws of any other jurisdiction by virtue of which exclusive jurisdiction of the courts of any other jurisdiction might be claimed; (c) irrevocably waives personal service of any summons and complaint, and consents to the service upon Guarantor of process in any such action or proceeding by the mailing of such process by first class, registered or certified mail, postage prepaid, to Guarantor at the address set forth in the preamble hereof and expressly agrees that such service shall be deemed in every respect effective service of process upon Guarantor in any suit, action, or proceeding arising out of this Guaranty, and be taken and held to be valid personal service upon and personal delivery to Guarantor; (d) irrevocably waives all objections as to venue and any and all rights Guarantor may have to seek a change of venue with respect to any such action or proceeding; (e) agrees that the laws of the State of New Jersey (irrespective of any conflicts of laws principles) shall govern in any such action or proceeding, and waives any defense to any action or proceeding granted or allowed by the laws of any other country or jurisdiction unless such defense is also allowed by the laws of the State of New Jersey; and (f) agrees that any final judgment rendered against Guarantor in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law, and expressly consents to the affirmation of the validity of any such judgment by the courts of any other jurisdiction so as to permit execution thereon. Guarantor hereby represents that there are no laws which would preclude, impair or hinder the recognition of any judgment rendered by any such court sitting in the State of New Jersey by and the enforcement of any such judgment by, the courts of any other jurisdiction, and Guarantor agrees that Guarantor shall not interpose any defense or claim against, and shall consent to the issuance of, all necessary documents by the courts of any other jurisdiction in order to execute upon any such judgment. Nothing in this Guaranty shall affect the right of Landlord to serve process in any manner permitted by law or shall limit the right of Landlord to bring proceeding(s) against Guarantor in the courts of any jurisdiction(s).

8.    As a further inducement to Landlord to accept the Lease and in consideration thereof, Guarantor agrees that in any action or proceeding brought on, under or by virtue of the Guaranty, Guarantor shall and does hereby waive trial by jury.

9.    Guarantor represents to Landlord that Guarantor has the full power, authority and legal right to execute and deliver, and to perform and observe the provisions of, this Guaranty including the payment of all monies hereunder. This Guaranty constitutes the legal, valid and binding obligation of Guarantor enforceable in accordance with its terms and does not conflict with and is not prohibited by any agreement, document or any other instrument or the order of any court to which Guarantor is a party or by which Guarantor is bound.

21

10.     All of Landlord's rights and remedies under the Lease or under this Guaranty are intended to be distinct, separate and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others.

11.     This Guaranty contains the sole and entire understanding and agreement with respect to its entire subject matter, and all prior discussions, representations, agreements and understandings heretofore had with respect thereto are merged herein. This Guaranty cannot be changed or terminated orally.

12.     Guarantor's obligations and duties hereunder may not be assigned to any party without Landlord's prior written consent.

13.     This Guaranty shall not be affected by any assignment of the Lease or subletting of the Premises, or any portion thereof, by Tenant. Each reference herein to Landlord shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to Guarantor shall be deemed to include the heirs, distributees, executors, administrators, legal representatives, successors and permitted assigns of Guarantor, as applicable, all of whom shall be bound by the provisions of this Guaranty.

IN WITNESS WHEREOF, the undersigned has executed this Guaranty of Lease as of the date set forth above.

GUARANTOR:

MILJOJKOVIC SNEZANA
NOTARY PUBLIC OF NEW JERSEY
Notary Public: My Commission Expires 5/19/2019

22